NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **MHA, LLC, d/b/a MEADOWLANDS HOSPITAL MEDICAL CENTER,** | : : : | |
| Plaintiff, | : : | Civil Action No. 15-7825 (ES) (JAD) |
| v. | : : | OPINION |
| **UNITEDHEALTH GROUP, INC., et al.,** | : : : | |
| Defendants. | : : : | |

**SALAS, DISTRICT JUDGE**

**I.   Introduction**

Plaintiff MHA, LLC, d/b/a Meadowlands Hospital Medical Center ("MHA", "Meadowlands Hospital" or the "Hospital") brought this action against several defendants (collectively, "United").[1] United has moved to compel arbitration (D.E. Nos. 36 & 40), which MHA has opposed (D.E. Nos. 37 & 41).

The parties have correctly identified a threshold question for this Court: "whether the question of arbitrability as to MHA's claims is itself an arbitrable issue such that the Court should direct the [American Arbitration Association] Panel to decide whether the claims are arbitrable." (*See* D.E. No. 33 at 1). Because, among other things, the agreements-at-issue have a clause stating that "all questions of arbitrability" must be arbitrated, the Court must direct the panel to decide whether MHA's claims are substantively arbitrable.

---

[1]   The named Defendants are: UnitedHealth Group Incorporated; United Healthcare Services, Inc.; UnitedHealthcare, Inc.; United Healthcare Insurance Company; Americhoice of New Jersey, Inc. d/b/a United Healthcare Community Plan; Oxford Health Plans (NJ), Inc.; and Oxford Health Plans, LLC. (D.E. No. 1).

Given the Court's resolution of this threshold issue for the reasons discussed in this Opinion, the Court need not reach several issues, including whether one or more of MHA's claims are arbitrable—as this is a question, in the first instance, for the arbitrators.

Accordingly, the Court GRANTS United's motion to the extent that it asks the Court to direct the arbitration panel to determine whether MHA's claims are arbitrable and STAYS the instant action.[2]

## II.    Relevant Background[3]

### A. MHA Purchases the Meadowlands Hospital & Enters into Agreements with United

Non-party Liberty Healthcare System, Inc. ("Liberty") owned and operated Meadowlands Hospital. (D.E. No. 37-11 at 1-2). During this period, the Hospital contracted with United to participate in United's provider networks. (*See id.*). United comprises health insurance providers; its insureds received care at Meadowlands Hospital. (*See* D.E. No. 37 ("Pl. Open. Br.") at 1; D.E. No. 36-1 ("Def. Open. Br.") at 3).

On December 7, 2010, MHA acquired Meadowlands Hospital. (Pl. Mov. Br. at 4; Def. Mov. Br. at 4). MHA later executed two "Facility Participation Agreements" (the "FPAs") with United. (*Id.*). The FPAs became effective as of November 1, 2011. (*Id.*). Between December 7, 2010 and November 1, 2011, Meadowlands Hospital remained in-network with United based on the agreements that were in place during Liberty's ownership of the Hospital. (D.E. No. 37-11 at 15).[4]

---

[2]    The Court has jurisdiction under 28 U.S.C. § 1331 and resolves the pending motion without oral argument under Federal Rule of Civil Procedure 78(b).

[3]    These background facts are undisputed unless otherwise noted. Additional facts are provided elsewhere in this Opinion as relevant to the Court's analysis.

[4]    As discussed *supra*, this was a finding made by an arbitration panel. MHA does not appear to challenge this finding in this action. (*See* Pl. Open. Br. at 13).

### B. The Dispute Resolution Process Provided by the FPAs

There are two FPAs at issue. The first one is between Meadowlands Hospital and Defendant Americhoice of New Jersey, Inc. d/b/a United Healthcare Community Plan. (D.E. No. 36-3, Exh. A; D.E. No. 37-7). The second one is between Meadowlands Hospital and Defendant United Healthcare Insurance Company. (D.E. No. 36-3, Exh. B; D.E. No. 37-7). Each FPA has an identical dispute-resolution clause, which provides—in relevant part—that:

> The parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes") including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof.
>
> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it shall thereafter be submitted to binding arbitration before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association . . . .
>
> . . . .
>
> This Article VII governs any dispute between the parties arising before or after execution of this Agreement, and shall survive any termination of this Agreement.

(D.E. No. 36-3, Exh. A at 12-13; D.E. No. 36-3, Exh. B at 12-13).

As noted, the parties agree that the FPAs became effective as of November 1, 2011. (*See, e.g.*, Def. Open. Br. at 4; D.E. No. 41 ("Pl. Resp. Br.") at 4). MHA subsequently terminated the FPAs—but the parties dispute when that occurred. (Pl. Open. Br. at 4 n.2).

### C. Prior Litigation & Arbitration Proceedings

On August 30, 2013, MHA sued United in New Jersey state court, alleging that United owed MHA over $200 million for medical billing claims since December 7, 2010. (D.E. No. 37-2). MHA avers that its state-court complaint alleged "direct claims"—i.e., "claims against

United seeking recovery for the non-payment of services based on <u>rights that belonged to MHA directly</u>." (Pl. Open. Br. at 4 (alteration in original)). Further, MHA's state-court complaint purportedly concerned two time-frames: (1) claims arising between December 7, 2010 and November 1, 2011; and (2) claims arising between October 31, 2011 and the date of termination of the FPAs (which, as noted above, is disputed). (Pl. Open. Br. at 4).

United removed that action to New Jersey federal court. (D.E. No. 37-3). But MHA successfully moved to remand the action back to New Jersey state court. *See MHA, LLC v. UnitedHealth Group, Inc.*, No. 13-6130, D.E. No. 21 (D.N.J. Jan. 24, 2014). Once back in state court, United then successfully moved to compel arbitration and dismiss MHA's complaint. (*See* D.E. No. 37-8). Specifically, in a February 28, 2014 order, the New Jersey state court ruled that: "The Parties are compelled to Arbitrate their disputes pursuant to the dispute resolution provision incorporated in the Facility Participation Agreement." (*Id.*).

On March 11, 2014, MHA filed a demand for arbitration with the American Arbitration Association (the "AAA"), seeking over $200 million in allegedly unpaid health care reimbursement claims. (D.E. No. 36-5, Exh. D).

**D. The Instant Action & the Arbitration Interim Order**

While arbitration was pending, on October 30, 2015, MHA filed the instant action. (D.E. No. 1). MHA's complaint in this action purports to involve: (1) derivative claims—i.e., claims that are brought by MHA as the assignee of patients' ERISA and contractual rights; and (2) direct claims that arose after termination of the agreement between MHA and United. (Pl. Open. Br. at 1). In other words, MHA states that its claims in this action "are brought under ERISA (Count I) in the place of those patients covered by ERISA policies, and for breach of contract (Count II) in the place of those patients covered under non-ERISA policies." (*Id.* at 10-11).

Further, MHA's complaint purportedly concerns two time-periods: (1) "the pre-contract claims period (December 7, 2010 through October 31, 2011)"; and (2) "the post-contract period—i.e., the period after termination of the FPAs [which is a disputed date] and continuing to date." (*Id.* at 11).

On December 28, 2015, MHA requested the AAA to stay arbitration pending resolution of this action—which the AAA shortly thereafter denied. (D.E. No. 37-10). Accordingly, arbitration proceeded. (*See id.*).

On May 3 and 4, 2016, an AAA panel held an evidentiary hearing. (D.E. No. 37-11 at 1). On June 22, 2016, the panel issued an "interim order." (*See generally id.*). In the June 22 order, the panel recounted that the May 3 and May 4 hearing concerned the following two "threshold" issues:

1. Whether Meadowlands Hospital Medical Center ("Meadowlands Hospital") was an in-network provider for United participants after MHA purchased Meadowlands Hospital on December 7, 2010, and before the parties executed two Facility Participation Agreements ("FPAs") effective on November 1, 2011; and

2. Whether the one-year limitation provision contained in Article VII of the FPAs bars the out-of-network claims Meadowland Hospital submitted to United for the period between December 7, 2010 and November 1, 2011.

(*See id.* at 1).

In its June 22 order, the AAA panel ruled as follows: "Issue #1: Meadowlands Hospital was an in-network provider for United Healthcare's patients from December 7, 2010 to November 1, 2011; Issue #2: Meadowlands Hospital is time-barred under the one-year limitation period contained in Article VII of the parties' FPAs." (*Id.* at 15). The panel declined to entertain MHA's argument that it "does not have the power to enforce any limitation period for [MHA's] indirect or derivative claims"—unless this Court "so rules." (*Id.*).

5

Meanwhile, in the instant action, the parties sought a ruling relating to the propriety of arbitrating MHA's claims brought before this Court. The parties explicitly set forth the issues for the Court to resolve. They are as follows:

1. First, whether the question of arbitrability as to MHA's claims is itself an arbitrable issue such that the Court should direct the AAA Panel to decide whether the claims are arbitrable;

2. Second, to the extent the Court decides not to direct the AAA Panel to decide the arbitrability of one or more of MHA's claims, then the parties will ask the Court to decide whether any such claims are arbitrable;

3. Third, with regard to any claims that the Court may choose not to refer to AAA arbitration; whether to stay further court proceedings on such non-arbitrable claims pending resolution of the arbitrable claims in arbitration. If the Court decides to proceed with litigation on any such non-arbitrable claims, Defendants request the Court allow them to renew their motion to dismiss (ECF No. 16) as to such claims and set a schedule for further briefing at that time.

(D.E. No. 33).

### III. The Parties' Arguments Concerning Who Decides the Issue of Arbitrability

As noted, United moves to compel arbitration. In relevant part, it argues that "because the FPAs require the parties to arbitrate all questions of arbitrability, this Court must send MHA's claims to arbitration *without* deciding for itself the question of whether the claims are substantively arbitratble [sic]." (Def. Open. Br. at 23). It asserts that the parties here have "'clearly and unmistakably' agreed to arbitrate questions of arbitrability." (*Id.*).

Citing the dispute-resolution clause of the FPAs, United contends that the "FPAs here include broad arbitration provisions that unmistakably show the parties' intent to arbitrate 'any and all' disputes, *including all issues of arbitrability*." (*Id.* at 24). Accordingly, it avers that the FPAs have a provision "that expressly requires the parties to submit 'all questions of arbitrability' to the arbitrators rather than to the court." (*Id.* at 25; *see also* D.E. No. 40 ("Def.

Resp. Br.") at 1 ("The FPAs include an express delegation provision by which the parties agreed that the AAA Panel, and not this Court, would decide whether MHA's claims are arbitrable.")). So, United argues that "the Court must compel MHA's claims to arbitration so that the AAA Panel can determine whether the claims are substantively arbitrable." (Def. Resp. Br. at 1).

MHA, however, argues that

> while the FPAs do state that "questions of arbitrability" are to be decided by the arbitration panel, it would be an absurd result if it were interpreted to mean that MHA somehow agreed that an arbitration panel, which is, as discussed above, not empowered to decide derivate [sic] claims, is somehow nonetheless empowered to decide whether it can decide them.

(Pl. Open. Br. at 21). Accordingly, MHA argues that the "issue of arbitrability" of MHA's claims in this action must be decided by this Court. (*Id.* at 22). And it cites (among other things) the AAA's June 22 order, averring that the AAA "explicitly refused to rule on whether its decision had any impact at all on MHA's" derivative claims in the instant action. (*Id.*; *see also* Pl. Resp. Br. at 21-23).

**IV.    Legal Standard**

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) ("Until a court determines whether arbitration should be compelled, however, judicial review is limited to two threshold questions: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with[in] the language of the arbitration agreement?") (citation and internal quotation marks omitted).

"[F]ederal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4" of the Federal Arbitration Act ("FAA"). *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Specifically, § 3 provides, in relevant part, that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

Importantly, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69. But "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations, citations, and internal quotation marks omitted).

"This is because the FAA places arbitration agreements on 'an equal footing with other contracts' and thus, like any other contract, a plaintiff may bring a challenge to court claiming that an agreement to arbitrate is unenforceable based on any of the 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228-29 (3d Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Accordingly, "while the general rule is that questions of arbitrability are for the court to resolve, parties can contract around this rule if they desire to arbitrate arbitrability." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 187 (3d Cir. 2010) (en banc). "[S]o the question 'who has

8

the primary power to decide arbitrability' turns upon what the parties agreed about *that matter*"—which raises the question: "[d]id the parties agree to submit the arbitrability question itself to arbitration?" *First Options*, 514 U.S. at 943.

## V.     Discussion

Both parties agree that there is a threshold issue here: whether this Court or the arbitrators should decide the arbitrability question. (*See* Pl. Resp. Br. at 21-22; Def. Resp. Br. at 3-4). The Court finds that the parties have clearly and unmistakably agreed to submit the question of arbitrability of MHA's claims to arbitration. Accordingly, the AAA panel must decide whether MHA's claims are arbitrable.

As an initial matter, MHA makes no attempt whatsoever to contest the validity of the FPAs or the arbitration provision at issue. Thus, the Court moves on to the second step of the two-step inquiry noted above: whether the question of arbitrability falls within the scope of the FPAs' arbitration clause. *See CardioNet*, 751 F.3d at 172 ("Because neither party contests the validity of the Agreement, we confine ourselves to assessing whether the disputes at issue fall within the scope of the Agreement's arbitration clause."); *Ins. Newsnet.com, Inc. v. Pardine*, No. 11-0286, 2011 WL 3423081, at *2 (M.D. Pa. Aug. 4, 2011) (same).

As reproduced above, the relevant language of the arbitration provision provides that:

> The parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes") including but not limited to *all questions of arbitrability*, the existence, validity, scope or termination of the Agreement or any term thereof.
>
> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it *shall thereafter be submitted to binding arbitration* before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association . . . .

9

(D.E. No. 36-3, Exh. A at 12; D.E. No. 36-3, Exh. B at 12-13 (emphases added)).  It is difficult to imagine a more clear and unmistakable agreement to arbitrate the issue of arbitrability than the one here.

To be sure, MHA's heavy reliance on the Third Circuit's *CardioNet* decision is misplaced.  (*See, e.g.*, Pl. Resp. Br. at 21 (arguing that "United's assertion that the arbitration provisions contained in the parties' [FPAs] require that an arbitrator, and not the Court, make the threshold determination of the arbitrability of the Federal Claims is incorrect" and citing the Third Circuit's *CardioNet* decision)).  As United aptly states (*see* Def. Resp. Br. at 4), *CardioNet* fails to address the threshold question raised here—i.e., *who* decides whether MHA's claims are arbitrable.  This is because, in that case, "neither party question[ed] the propriety of the District Court determining whether the dispute is arbitrable" and the Third Circuit "assume[d], without further analysis, that the Agreement leaves the question of arbitrability to judicial determination."  *CardioNet*, 751 F.3d at 171-72.  Here, however, there exists a dispute over whether the parties agreed to arbitrate the issue of arbitrability.

Similarly, MHA's reliance on the Third Circuit's *Opalinski v. Robert Half Int'l Inc.* case is unpersuasive.  (*See* Pl. Open. Br. at 21-22 (citing 761 F.3d 326 (3d Cir. 2014))).  Citing *Opalinski*, MHA argues that "the Third Circuit has been clear that the district court, and not an arbitration panel, should determine issues of arbitrability."  (*Id.* at 21).  But, in *Opalinski*, the Third Circuit ruled as follows:

> [Plaintiffs'] employment agreements provide for arbitration of any dispute or claim arising out of or relating to their employment but are silent as to the availability of classwide arbitration or *whether the question should be submitted to the arbitrator. Nothing else in the agreements or record suggests that the parties agreed to submit questions of arbitrability to the arbitrator*. Thus, the strong presumption favoring judicial resolution of questions of

10

> arbitrability is not undone, and the District Court had to decide whether the arbitration agreements permitted classwide arbitration.

761 F.3d at 335 (emphasis added). Further, *Opalinski* affirms the rule that the Court applies here concerning the threshold issue of who decides arbitrability: "courts must decide questions of arbitrability *unless the parties clearly and unmistakably provide otherwise*." 761 F.3d at 335 (emphasis added) (citation and internal quotation marks omitted).

MHA seems to acknowledge this rule, arguing that the FPAs "contain no such 'clear statement.'" (*See* Pl. Open. Br. at 20-21). It contends that, although the FPAs state "that 'questions of arbitrability' are to be decided by the arbitration panel, it would be an absurd result if it were interpreted to mean that MHA somehow agreed that an arbitration panel, which is, as discussed . . . , not empowered to decide derivate [sic] claims, is somehow nonetheless empowered to decide whether it can decide them." (*Id.* at 21).

The problem with MHA's argument is that it conflates *who* decides the question of arbitrability of MHA's claims with whether its claims are arbitrable. (*See, e.g.*, Pl. Resp. Br. at 22 ("[I]f MHA's derivative claims are not subject to the arbitration provisions of the FPAs, any threshold question of arbitrability is for the Court."). These are two separate issues. *See Soto v. F&M Mafco, Inc. & Christiansted Equip. Ltd.*, No. 14-0024, 2016 WL 1301119, at *6 (D.V.I. Mar. 31, 2016) ("Because the parties here have clearly and unmistakably agreed to 'arbitrate the issue of arbitrability,' the issue of whether Plaintiff's particular claims fall within the scope of the [dispute resolution agreement] is properly decided by the arbitrator." (internal citation omitted)); *Luzerne County v. D.A. Nolt, Inc.*, No. 14-0831, 2014 WL 4411070, at *3 (M.D. Pa. Sept. 5, 2014) ("I find whether the parties agreed to arbitrate the underlying dispute is for the arbitrator to decide. At issue before me is not the underlying dispute as to whether there was a waiver of claims, and not whether the parties agreed to arbitrate this dispute, but rather, *who*

11

decides whether the parties agreed to arbitrate this dispute. The arbitrator has the power to make this decision, not the Court.").

Indeed, much of MHA's argumentation is suited for the AAA panel—not this Court—given the unequivocal language in the arbitration clause concerning *who* decides the question of arbitrability of MHA's claims.  (*See, e.g.*, Pl. Resp. Br. at 23 ("The FPAs simply were not intended to govern or set forth insureds' rights, duties, or obligations with respect to United and the insureds' claims are therefore not arbitrable."); Pl. Open. Br. at 19 ("[T]he arbitrability of MHA's derivative claims does not depend on the arbitrability of MHA's direct claims. Rather, MHA is only required to arbitrate its derivative claims if the FPAs clearly state that they are arbitrable.") (alteration in original)).

And contrary to MHA's contention (*see* Pl. Open. Br. at 22; Pl. Resp. Br. at 22 n.7), the AAA panel's June 22, 2016 interim order does not support its position.  In that interim order, the panel concluded as follows: "Finally, MHA argues that the Panel 'does not have the power to enforce any limitation period for [MHA's] indirect or derivative claims.' This issue is awaiting decision in the U.S. District Court for the District of New Jersey. The Panel will not entertain this argument unless the federal court so rules." (D.E. No. 37-11 at 15).  MHA's reliance on this portion of the panel's ruling is misplaced.  As United aptly points out (Def. Resp. Br. at 6), the panel did not resolve the threshold question that is before the Court—i.e., whether the parties have clearly and unmistakably agreed to arbitrate the question of arbitrability.  Commendably, the panel addressed what it could *without* deciding a dispute that implicates a threshold issue that is before this Court.

In sum, MHA's claims may or may not be arbitrable.  But that decision must be made, in the first instance, by the AAA panel.  After all, the arbitration clause in the FPAs shows that the

parties clearly and unmistakably agreed to arbitrate the issue of arbitrability. The Court finds no basis in fact or law supporting that, because MHA purportedly brought derivative claims in the instant action, the question of who decides whether MHA's claims are arbitrable must necessarily be resolved by this Court.[5] Indeed, doing so would improperly sidestep the clear and unmistakable agreement in the FPAs to arbitrate arbitrability.

## VI.     Conclusion

Thus, because the Court finds that the parties have agreed to arbitrate the issue of arbitrability, MHA's claims in this action must be referred to arbitration. This action is hereby STAYED. An appropriate Order accompanies this Opinion.

/s/ Esther Salas
**Esther Salas, U.S.D.J.**

---

[5] (*See, e.g.*, Pl. Resp. Br. at 22 ("[I]f MHA's derivative claims are not subject to the arbitration provisions of the FPAs, any threshold question of arbitrability is for the Court.")).